AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
INFORMATION ASSOCIATED WITH YOUSIF AMIN
MUBARAK, TELEPHONE NUMBER: 614-726-0809 THAT IS
STORED AT PREMISES CONTROLLED BY APPLE, INC.

)
)
)
)
)
)

Case No.   2:21-mj-685

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 875(c) | Transmission of Threats in Interstate Commerce |

The application is based on these facts:
see attached affidavit.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DAVID D. MCCRACKEN   SPECIAL AGENT, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/20/2021

City and state:   Columbus, Ohio

_____
Chelsey M. Vascura   *Judge's signature*
United States Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF** INFORMATION ASSOCIATED WITH YOUSIF AMIN MUBARAK, TELEPHONE NUMBER: 614-726-0809 THAT IS STORED AT PREMISES CONTROLLED BY APPLE, INC. | Case No. ___2:21-mj-685___<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, David D. McCracken, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since September 2008. I am currently assigned to the Cincinnati Division Columbus Resident

Agency as a member of the Joint Terrorism Task Force (JTTF), where I investigate violations of federal law relating to domestic and international terrorism investigations. Since becoming an FBI agent, I have received specialized training as a bomb technician to include improvised explosives and post blast investigations.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement, and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 875(c) (Transmission of a Threat in Interstate Commerce) have been committed by YOUSIF AMIN MUBARAK. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.      On September 12, 2021 at approximately 5:00p.m., Sunoco, located at 501 West Waterloo St., Canal Winchester, Ohio 43110, received a call from a male that asked the attendant if they had any money in the draw (cash drawer). The Sunoco attendant answered "No." The

male caller then stated, "he was gonna come rob them" and the attendant hung up. The number received from the call was telephone number 614-726-0809. The Sunoco attendant called the Fairfield County Sheriff's Office and deputies were dispatched to the gas station to take a report.

7.      On September 12, 2021, through a datamining platform query, it was discovered that YOUSIF AMIN MUBARAK, date of birth: xx/xx/1995, last known address of Canal Winchester, 43110 was the owner of telephone number 614-726-0809.

8.      On September 12, 2021 at approximately 10:00p.m., personnel from the Fairfield County Sheriff's Office, Columbus Police Department, and the FBI JTTF went to MUBARAK's last known address. MUBARAK was not physically there but did taunt the officers on scene through a RING doorbell camera that he still had access to remotely. The female residents at the home stated that MUBARAK has not lived at the residence for at least six months and that they believed he was in Oregon.

9.      On September 12, 2021 at approximately 10:20p.m., Fairfield County Sheriff's Office Dispatch, received a call from telephone number 614-726-0809. The caller on the line threatened the dispatcher with "putting two bullets in her head." This conversation lasted for some time and, during that time, another dispatcher was able to acquire a ping and location for MUBARAK (a Safeway Pharmacy in Renton, Washington).

10.      During the evening of September 12, 2021, the clerk from Sunoco engaged with MUBARAK via text messages on the 614-726-0809 number. At what appears to be a 10:41 p.m. timestamp, MUBARAK texted, "Cops just showed up to my house don't hate the player hate the game again". This is consistent with law enforcement visiting MUBARAK's home around 10:00 p.m. and taunting them through the RING doorbell camera.

3

11.     During the same text exchange with the Sunoco clerk, MUBARAK sent multiple lewd and graphic text messages indicating his desire to have sex with the Sunoco clerk's wife, daughters and/or mother. MUBARAK also asked at one point, "Do your daughters go to Canal Winchester Schools?" On the following morning of September 13, 2021, at approximately 7:08a.m., a call, using what is suspected to be a spoofed telephone number, was placed to Canal Winchester High School, wherein the caller stated, "You need to get your women and children out of the building. We have a suicide bomber in the building." A second call to Canal Winchester Middle School was placed at approximately 7:13 a.m., also by what law enforcement believes to be a spoofed telephone number, wherein the caller stated, "I have placed several bombs in your building. I would get your women and children out now. Stay alive." Both schools were evacuated then closed for the day as a result of these threats.

12.     On September 15, 2021, Fairfield County Sheriff's Office conducted a query for calls related to MUBARAK. The query resulted in a call received on or about May 30, 2021 from a person identifying themself as YOUSIF MUBARAK, telephone number 614-726-0809, wanting to report a complaint.

13.     AT&T records revealed that the subscriber information for telephone number 614-726-0809 belonged to YOUSIF AMIN MUBARAK, Canal Winchester, OH 43110.

14.     Ohio Bureau of Motor Vehicle records revealed that MUBARAK registered the following vehicle: 2015 Gray Jeep Grand Cherokee, Ohio License Plate: HYT5292, VIN: 1C4RJFAG8FC101930.

15. On September 15, 2021, an arrest warrant was issued for MUBARAK in United States District Court for the Southern District of Ohio in connection with a criminal complaint alleging violations of 18 U.S.C. § 875(c) (Transmission of a Threat in Interstate Commerce).

16. On September 17, 2021, MUBARAK left a voicemail message on a Franklin County Municipal Court Judge's phone stating, "I will find you, I don't give a fuck if the FBI is on it... I will kill you myself bitch .... 614-726-0809." Upon further investigation it was revealed that MUBARAK had a proceeding before the same judge regarding Ohio Revised Code 4511.19(A)(1)(A), Operating Vehicle While Impaired. The Magistrate Court Judge's Office received approximately 56 phone calls from MUBARAK's telephone number in a seven-day period.

17. On September 21, 2021, FBI Portland Special Agents arrested MUBARAK in his above-mentioned registered vehicle, which was located on the third floor of the SE Park Avenue Parking Garage, 12952 SE 27th Place, Milwaukie, Oregon. MUBARAK was shown a digital copy of the arrest warrant and read aloud the offense listed in the arrest warrant. MUBARAK stated the cell phone in the middle of his vehicle was his and that his phone number was 614-726-0809 without any Special Agent or Task Force Officer questioning him. An Agent seized MUBARAK'S cell phone. Another Agent called 614-726-0809 from his (Agent) phone and the seized cell phone showed an incoming call. MUBARAK'S cell phone is currently being held as evidence at the FBI Portland Field Office, 9109 NE Cascades Parkway, Portland, Oregon 97220.

18. On September 24, 2021 the FBI received information pursuant to a Preservation Letter that Apple acknowledged having stored account holder data related to 614-726-0809.

## INFORMATION REGARDING APPLE ID AND iCLOUD[1]

19.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

20.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

        a.     Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

        b.     iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

        c.     iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-

---

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d.     Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.     Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f.     Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g.     App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased

7

through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

21.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

22.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

23.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

24.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

25.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by

9

Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

26.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

27.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

10

28.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

29.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

30.     In my experience, subjects utilize applications to mask their identity. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to "spoof" their telephone numbers. In addition, emails, instant messages, Internet activity, documents, and

11

contact and calendar information can lead to the identification of instrumentalities of the crimes under investigation.

31.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

32.     Based on the forgoing, I request that the Court issue the proposed search warrant.

33.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
David D. McCracken
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me on ___October 20_____, 2021

_____
UNITED STATES MAGISTRATE JUDGE

12

# **ATTACHMENT A**

## **Property to Be Searched**

This warrant applies to information associated with Yousif Amin Mubarak, telephone number 614-726-0809 that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

## <u>ATTACHMENT B</u>

## <u>Particular Things to be Seized</u>

**I.     Information to be disclosed by Apple**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on September 24, 2021, Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"),

Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber

Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile

Station Equipment Identities ("IMEI");

      c.     The contents of all emails associated with the account September 1, 2021 to

present, including stored or preserved copies of emails sent to and from the account (including

all draft emails and deleted emails), the source and destination addresses associated with each

email, the date and time at which each email was sent, the size and length of each email, and the

true and accurate header information including the actual IP addresses of the sender and the

recipient of the emails, and all attachments;

      d.     The contents of all instant messages associated with the account from September

1, 2021 to present, including stored or preserved copies of instant messages (including

iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft

and deleted messages), the source and destination account or phone number associated with each

instant message, the date and time at which each instant message was sent, the size and length of

each instant message, the actual IP addresses of the sender and the recipient of each instant

message, and the media, if any, attached to each instant message;

      e.     The contents of all files and other records stored on iCloud, including all iOS

device backups, all Apple and third-party app data, all files and other records related to iCloud

Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork

(including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud

2

Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

  f.  All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

  g.  All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

  h.  All records pertaining to the types of service used;

  i.  All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

  j.  All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

  The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

3

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of Title 18 U.S.C. § 875(c) (Transmission of a Threat in Interstate Commerce) involving Yousif Amin Mubarak since September 1, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.     The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s);

b.     Records and information pertaining to the transmission of a threat in interstate commerce to include iMessages, email, and iCloud Drive documents with pictures or discussion, as well as internet or application search histories related to businesses, government buildings/agencies, schools, and persons who received threats or were potential targets. Calendar data to include dates affiliated with the aforementioned topics including saved dates, travel plans, and dates of where threats were received.

c.     Evidence of any Ring app or ability to communicate through a Ring device;

d.     Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

e.     Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information); and

4

      f.      Evidence indicating the subscriber's state of mind as it relates to the crime under investigation.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Apple Inc., and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Apple Inc. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Apple Inc. and they were made by Apple Inc. as a regular practice; and

b.     such records were generated by Apple's electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Apple Inc. in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by Apple Inc., and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____        _____
Date                                                        Signature

2